UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

Matthew Baker,

        Plaintiff,

 -vs-              3:12-CV-1715

Commissioner of Social Security

        Defendant.

_____

**Thomas J. McAvoy,**
**United States District Judge**


**DECISION and ORDER**

  Claimant Matthew Baker brought this suit under § 205(g) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g) & 1383(c)(3), to review a final determination of the Commissioner of Social Security ("Commissioner") denying Claimant's application for Social Security Disability Insurance benefits. Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") denying the application for benefits is not supported by substantial evidence and contrary to the applicable legal standards. The Commissioner argues that the decision is supported by substantial evidence and made in accordance with the correct legal standards. The parties have filed their briefs, including the administrative record on appeal, and the matter has been submitted for decision without oral argument. Pursuant to Northern District of New York General Order No. 8, the Court

1

proceeds as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

**I.    PROCEDURAL HISTORY**

Claimant filed both an application for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits on November 7, 2006, alleging that he has been disabled since January 23, 2006 due to a back condition. Soc. Sec. Admin. Rec., ECF No. 8 ("R."), at 95-99. Claimant's claim for DIB was initially denied on March 19, 2007. Id. at 64-79. On December 9, 2009, Claimant requested a hearing before an Administrative Law Judge ("ALJ"), which was held on January 5, 2009. Id. at 19. The ALJ issued a partially favorable decision on March 3, 2009, finding a closed period of disability from January 23, 2006 to September 30, 2007. Id. at 14-27. On May 1, 2009, the Claimant filed a request for review by the Appeals Council. Id. at 4-10. The Appeals Council denied Claimant's request for review on May 6, 2009, making the ALJ's decision the final decision of the Commissioner. Id. at 1-3.

Thereafter, Claimant filed a Complaint in this Court seeking review of the ALJ's determination that Claimant had made a medical improvement as of October 1, 2007, which was remanded for a new hearing on December 8, 2009. Id. at 402-406. On April 8, 2010, the Appeals Council issued an Order directing that the basis of a finding of medical improvement needed to be specified showing the decrease in the severity of the Claimant's condition and that the ALJ's decision failed to note such a distinction. Id. at 407-11.

On January 26, 2011, a new administrative hearing was held, followed by a third hearing on

April 7, 2011. The claimant and a vocational expert testified. Id. at 345-50; 351-83. Following the third hearing, the ALJ made the same administrative decision as the prior administrative decision on June 9, 2011. Id. at 321-44.

The Claimant again filed a request for review by the Appeals Council on July 12, 2011. Id. at 313-20. The Appeals Council again denied Claimant's request for review on September 26, 2012, thereby making the ALJ's second and identical determination the final decision of the Commissioner. Id. at 309-11.

Claimant filed a second complaint in this Court on November 21, 2012, alleging the decision by the Commissioner "is not based on substantial evidence insofar as the Commissioner found a medical improvement as of October 1, 2007" and that "there is not sufficient evidence to support a finding of a medical improvement on or after October 1, 2007 as well as that there was a failure to utilize the services of a vocational expert under the applicable law." Pl.'s Br., ECF No. 11, at 4.

## II.    FACTS

The Claimant is 44 years old and was born on January 27, 1969. R. at 24. He has an eleventh grade education and does not have a high school equivalency diploma. Id. at 32. He has past relevant work as an industrial parts material handler. Id. at 33. The Claimant has a disability arising out of a severe back condition. Id. at 34. He has not engaged in substantial gainful employment since January 23, 2006. Id. at 23.

The Claimant initially underwent an interior lumbar interbody fusion at L5-S1 on February

1, 2006.  Id. at 197-98.  Eric Seybold, M.D., performed this surgery.  Id. at 197.  Follow up on February 17, 2006 revealed ongoing low back pain.  Id. at 214.  While x-rays of the lateral and AP view of the lumbar spine showed good position of the interbody cage as well as the interior plate, the Claimant had ongoing symptomatology as well as hamstring and quadriceps tightness.  Id. at 214.  On April 28, 2006, it was noted that x-rays at that time were compared to the February 17, 2006 x-rays.  Id. at 210.  The x-rays of April 28, 2006 revealed that there was some evidence of delayed union and loss of fixation on the fusion interbody cage.  Id. at 210.  The cage appeared to have subsided approximately 3 to 4 millimeters more as compared to the February 17, 2006 x-rays.  Id. at 210.  There was not a significant amount of bone growing in the cage.  Id. at 210.  A further MRI of the lumbar spine was recommended at that point.  Id. at 210.  Records from June 6, 2006 contain some reference and discussion of Claimant attempting to return to work; however, his condition had worsened by August 18, 2006.  Id. at 207, 205.  On August 18, 2006, Dr. Seybold determined that he would have a second surgery for posterior stabilization at the L5-S1 with pedicle screws as well as decompression and a Gill procedure.  Id. at 205.

The Claimant ultimately underwent a second surgery on September 26, 2007.  Id. at 191-93.  Despite the subsequent surgery, Claimant's problems with leg symptomatology continued through January of 2007.  On July 10, 2007, PT Mansfield performed a Residual Functional Capacity assessment.  Id. at 236-51.  Specifically, in that RFC assessment, PT Mansfield found the Claimant was not able to return to work at that time.  Id. at 236.  PT Mansfield found significant spinal scarring appeared , as well as a failed lumber fusion with repeated fusion.  Id. at 236-51.  Sitting,

standing and walking tolerances were limited. Id. at 236-51. The Claimant had difficulty performing the full range of sedentary activities on a frequent basis. Id. at 236-51.

On October 9, 2007, Claimant visited Domingo Jimenez, M.D. Id. at 282. Claimant described his back pain as aching and dull. Id. Dr. Jimenez noted no radiation of Claimant's back pain. Id. Upon physical examination, the Claimant had mild tenderness to the lumbosacral spine, no kyphosis or scoliosis, intact balance and gait, no sensory loss, and no motor weakness. Id. at 284. On October 12, 2007, Claimant visited Dr. Seybold for assistance in completing paperwork. Id. at 281. During the visit, Dr. Seybold noted that Claimant was not taking pain medication for his lumbar spine. Id. He complained of some stiffness, but denied any severe low back or leg pain. Id. Claimant could stand upright, forward flex and extend without pain, and had no evidence of footdrop or neurologic deficit. Id. at 281.

On April 9, 2010, Claimant experienced only mild lumbosacral tenderness and was instructed by Dale Fluegel, F.N.P. to use ice therapy to reduce lumbar spine symptomatology. Id. at 597. On August 10, 2010, Claimant saw Pranab Datta, M.D. Id. at 585-88. Dr. Datta noted Claimant's scar was healed and he experienced no tenderness, spasm, scoliosis, kyphosis, or trigger points; his gait and station were normal; he did not need assistance getting on and off the exam table; was able to rise from the chair without difficulty; and had a full range of motion. Id. at 586-87. By March 31, 2011, Claimant's back pain was only occasional and Dr. Seybold found that he showed no signs of neurological compression. Id. at 634.

### III. DISCUSSION

**A. Standard of Review**

A court's review of the Commissioner's final decision "is limited to determining whether there is substantial evidence in the record to support such decision." Smith v. Apfel, 69 F. Supp. 2d 370, 373 (N.D.N.Y. 1999) (citing Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991)). Substantial evidence is "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." Id. (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Such evidence must be "more than a mere scintilla of evidence scattered throughout the administrative record." Smith, 69 F. Supp. 2d at 373 (citing Richardson, 402 U.S. at 401). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Smith, 69 F. Supp. 2d at 373 (quoting Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988)). However, "a reviewing court must not substitute its interpretation of the administrative record so long as there exists substantial support for the decision in the record." Id.

In addition, "the scope of review involves determining both whether the Commissioner has applied the correct legal standard and whether the determination is supported by substantial evidence." Smith, 69 F. Supp. 2d at 373 (citing Johnson v. Bowen, 817 F.2d 983, 983 (2d Cir. 1987)). Therefore, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards, even if the ultimate decision may be arguably supported by substantial evidence, the Commissioner's decision may not be affirmed." Smith, 69 F. Supp. 2d at

373 (citing Johnson, 817 F.2d at 986)).

The "court has the authority to reverse with or without remand." Smith, 69 F. Supp. 2d at 373 (citing 42 U.S.C. § 405(g)). Remand is "appropriate where there are gaps in the record or further development of the evidence is needed." Smith, 69 F. Supp. 2d at 373. Reversal is "appropriate, however, when there is "persuasive proof of disability' in the record and remand for further evidentiary development would not serve any purpose." Smith, 69 F. Supp. 2d at 373 (quoting Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980)).

**B. Medical Improvement Analysis**

To be considered disabled under the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations require that the ALJ follow a five-step evaluation process to determine whether an individual is disabled. 20 C.F.R. § 404.1520. The five-step analysis and the analysis for medical improvement are "distinct with differing objectives and dissimilar burdens of proof." Deronde v. Astrue, No. 7:11-998, 2013 WL 869489, at *3 (N.D.N.Y., Feb. 11, 2013).

> Nonetheless, they share certain core administrative concepts, and involve common challenges. In either scenario, an evidentiary record must be developed fully, and credibility choices must be made. Both contemplate assessment of a claimant's "residual functional capacity." And, in each instance, an administrative adjudicator may (in appropriate circumstances) take administrative notice of disability vel non by adopting and applying findings published in "Medical-Vocational Guidelines," commonly called "the grids."

Deronde, 2013 WL 869489 at *3.  As a general rule, "if the Commissioner finds that an individual is no longer disabled, [his] benefits may be terminated."  Matice v. Comm'r of Soc. Sec., No. 6:99-CV-1834, 2004 WL 437472, at *3 (N.D.N.Y., Feb. 11, 2004); see 42 U.S.C. § 1382c(a)(4).  However, "benefits can only be terminated if there is substantial evidence demonstrating a 'medical improvement' which enables the individual to engage in substantial gainful activity."  Id.

"Medical improvement" means "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled."  42 U.S.C. § 423(f); 20 C.F.R. §§ 404.1594, 416.994.  "[A] determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [a claimant's] impairment(s)."  20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(I).

In order to determine "whether or when to terminate previously awarded benefits due to medical improvement," the Commissioner employs a sequential analysis.  Deronde, 2013 WL 869489 at *2.  While this Aanalysis is employed most commonly at subsequent "continuing disability review' proceedings . . . [s]everal circuits . . . hold that it is also appropriate for initial-application determinations resulting in benefits awards for closed periods."  Id. (citing Waters v. Barnhart, 276 F.3d 716, 719 (5th Cir. 2002); Shepherd v. Apfel, 184 F.3d 1196, 1200 (10th Cir. 1999); Pickett v. Bowen, 833 F.2d 288, 292-93 (11th Cir. 1987); Chrupcala v. Heckler, 829 F.2d 1269, 1274 (3d Cir. 1987); Burress v. Apfel, 141 F.3d 875, 879-80 (8th Cir. 1998); Jones v. Shalala,

10 F.3d 522 (7th Cir. 1993); Carbone v. Astrue, No. 08-CV-2376 (NGG), 2010 WL 3398960, at *13 (E.D.N.Y., Aug. 26, 2010); Chavis v. Astrue, No. 5:07-CV-0018 (LEK/VEB), 2010 WL 624039, at *5 (N.D.N.Y., Feb. 18, 2010); Hall v. Chater, No. 94-CV-1401 (FB), 1996 WL 118544 (E.D.N.Y. Mar. 8, 1996)). While the "Second Circuit has not confirmed whether the eight-step process is appropriate for closed-period disability cases[,] . . . [d]istrict courts in the Second Circuit . . . note that it is an appropriate standard." Deronde, 2013 WL 869489 at *2 (citing Carbone, 2010 WL 3398960, at *13); Chavis, 2010 WL 624039 at *6; Abrams v. Astrue, No. 06-CV-0689-JTC, 2008 WL 4239996, at *2 (W.D.N.Y., Sept. 12, 2008)).

Under the medical improvement analytical model, "the burden rests with the Commissioner at every step." Deronde, 2013 WL 869489 at *2 (citing Chavis, 2010 WL 624039 at *4 ("medical improvement standard requires the Commissioner to meet a burden of showing, by substantial evidence, that a medical improvement has taken place in a claimant's ability to perform work activity") (internal citations omitted)); see 20 C.F.R. §§ 404.1594(f)(1)-(8), 416.994(b)(5)(I)-(viii).

Step One of the medical improvement ("MI") analysis[1] requires the Commissioner to consider whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1594(f)(1). If not, the Commissioner next considers at MI Step Two whether the claimant has an impairment or combination of impairments that meet or equal the severity of listed impairments

---

[1] The eight-step analysis pertains to DIB recipients. When applying a medical improvement standard to a SSI recipient, regulations establish an identical process with the exception that Step One is eliminated. Deronde, 2013 WL 869489 at *n. 7; see 20 C.F.R. § 416.994(b)(5)(i)-(vii) (seven step regulatory framework for SSI); compare with 20 C.F.R. § 404.1594(f)(1)-(8) (eight-step evaluation for DIB).

set forth at 20 C.F.R. part 404, subpart P, appendix 1. 20 C.F.R. §§ 404.1594(f)(2), 416.994(b)(5)(i). If the impairment does not equal a listed impairment, the Third MI step addresses whether there has been medical improvement in the claimant's condition. 20 C.F.R. §§ 404.1594(f)(3), 416.994(b)(5)(ii).

If there has been medical improvement, at MI Step Four, the Commissioner determines whether such improvement is related to the claimant's ability to perform work B that is, whether there has been an increase in the individual's residual functional capacity. 20 C.F.R. §§ 404.1594(f)(4), 416.994(b)(5)(iii). If the answer to MI Step Four is yes, the Commissioner goes to MI Step Six and inquires whether all of the claimant's current impairments in combination are severe. If it is determined there has been no medical improvement or the medical improvement is not related to the claimant's ability to work, at MI Step Five, consideration is given to whether the case meets any of the special exceptions to medical improvement for determining that disability has ceased. 20 C.F.R. §§ 404.1594(f)(5), 416.994(b)(5)(iv).

At MI Step Six, if medical improvement is shown to be related to the claimant's ability to work, the Commissioner is to assess whether the claimant's current impairments in combination are severe B that is, whether they impose more than a minimal limitation on his physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1594(f)(6), 416.994(b)(5)(v). If the answer to MI Step Six is yes, at MI Step Seven the Commissioner must determine whether the claimant can perform past relevant work. 20 C.F.R. §§ 404.1520(e), 404.1594(f)(7), 416.994(b)(5)(vi); Social Security Ruling (SSR) 82-61.

If the Commissioner determines the claimant cannot perform any past relevant work, then at MI Step Eight the Commissioner must establish whether there is alternative work in the national economy that the claimant can perform given his age, education, work experience, and residual functional capacity. 20 C.F.R. §§ 404.1594(f)(8), 416.994(b)(5)(vii). If the claimant cannot perform a significant number of other jobs, he remains disabled despite medical improvement; if, however, he can perform a significant number of other jobs, disability ceases. Id.

In the present case, after finding that the claimant's severe impairments did not meet or exceed the listings, and that he was able to perform sedentary work, the ALJ determined that there was a continuous 20-month period, from January 23, 2006 through September 30, 2007, during which there were no jobs that existed in significant numbers in the national economy where Claimant could engage in substantial gainful activity. ECF No. 8-8 at 22-25. The ALJ also found that as of October 1, 2007, medical improvement occurred and Claimant's disability ended. Id. at 25. The ALJ determined that, as of October 1, 2007, the Claimant has the residual functional capacity to perform past relevant work as security guard. Id. at 25-30. The Claimant contends that the ALJ's decision is based upon misapplication of the law and is not supported by substantial evidence.

**C. The ALJ Did Not Err in Determining That The Claimant Is No Longer Disabled**

The Court finds that substantial evidence supports the ALJ's finding that the Claimant experienced a medical improvement and was no longer disabled beginning October 1, 2007. Dr. Seybold's notes from October 12, 2007, show that, on physical examination, the Claimant was able

to stand upright, forward flex and extend without pain, and had no showing of footdrop or any neurological deficit. R. at 136. Moreover, Dr. Seybold noted the Claimant was not taking pain medication for his lumbar spine, experienced some stiffness and had no severe back or leg pain. Id. However, on this same day, Dr. Seybold completed a county social services form in which he stated the Claimant was unable to work in any capacity. Id. at 107. As this report was unsupported by the objective medical findings, the ALJ properly awarded only limited weight to that finding. R. at 26-27. See, e.g., Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) (opinion of the treating physician is not afforded controlling weight where the treating physician issued opinions that are not consistent with other substantial evidence in the record).

The Claimant argues that because Dr. Seybold has recertified his 2007 opinions, they are still supported. However, Dr. Seybold relies on a July 2007 assessment by a physical therapist ("PT"), Todd Mansfield. R. at 91-108, 161-162; 2-3. PT Mansfield's report indicates that the Claimant had significant spinal scarring, which was not noted by a medical provider or depicted in a diagnostic image. Id. Moreover, PT Mansfield's report indicates that Claimant's limitations in sitting, standing, and walking were based on Claimant's subjective statements, rather than PT Mansfield's objective testing. ECF No. 8-7 at 94; see also, Aldrich v. Astrue, 5:08-CV-402, 2009 WL 3165726, at *7 (N.D.N.Y., Sept. 28, 2009) (holding the ALJ was entitled to give less than controlling weight to the opinion of a treating source who relied more on subjective complaints than on diagnostic or clinical evidence). Accordingly, the ALJ properly awarded PT Mansfield's report only limited weight. R. at 26.

The Claimant further argues that the ALJ's reliance on Dr. Jimenez's report is unfounded. However, in his report, Dr. Jimenez notes that Claimant's lower back pain was alleviated by stretching and with mobility and that the pain did not radiate. Id. Claimant experienced some lumbar spine tenderness to palpation, but there was no noted kyphosis or scoliosis. R. at 139. Moreover, Claimant's balance, gait, and coordination were normal. Id. This finding is consistent with the medical evidence outlined above, and thus supported by substantial evidence.

Finally, there is additional medical evidence that Claimant's lumbar spine improved. On April 9, 2010, Claimant experienced only mild lumbosacral tenderness and was instructed to use ice therapy to reduce lumbar spine symptomatology. R. at 33. By August 10, 2010, Claimant's scar was healed and he experienced no tenderness, spasm, scoliosis, kyphosis, or trigger points, his gait and station were normal, and had a full range of motion. Id. at 22-23. Moreover, Claimant had no cervical or paracervical pain, spasm, or trigger points. Id. at 56. By March 31, 2011, Claimant's back pain was only occasional and he showed no signs of neurological compression. Id. at 70. As such, there is substantial evidence that Claimant experienced medical improvement that ended his disability. The ALJ's decision was based on substantial evidence and therefore does not warrant a reversal.

## V. CONCLUSION

For the foregoing reasons, Claimant's motion on the pleadings is **DENIED**. Defendant's motion on the pleadings is **GRANTED**, and the Court **AFFIRMS** the final decision of the Commissioner.

**IT IS SO ORDERED.**

Dated: March 27, 2014

_____
Thomas J. McAvoy
Senior, U.S. District Judge